Savas BUGRA, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 327, 2002.

Supreme Court of Delaware.

Submitted: Jan. 14, 2003.
Decided: March 25, 2003.

John S. Edinger, Jr., Assistant Public Defender, Office of the Public Defender, Wilmington, for Appellant.

John Williams, Deputy Attorney General, Department of Justice, Dover, for Appellee.

Before VEASEY, Chief Justice, HOLLAND and STEELE, Justices.

PER CURIAM:

In this case we are again called upon to address an improper remark made by counsel for the State during closing argument. Although we continue to admonish lawyers for the use of improper remarks during trial we find no grounds for reversal of the conviction in this case. The comment was improper, but in light of the factors established by this Court in *Hughes v. State*,[1] and most recently in *Hunter v. State*,[2] it was not so prejudicial that it denied appellant the right to a fair trial. We therefore affirm the judgment of the Superior Court and its denial of the motion for mistrial.

### Facts

On the evening of July 7, 2001, appellant, Savas Bugra, and the complaining witness, Fazli Ede, were in a bar in New Castle County. Both Bugra and Ede are Turkish immigrants.

Ede testified that while he was sitting in the bar Bugra approached him, pushed him and asked for a ride. Ede declined to give Bugra a ride but five minutes later

---

1. *Hughes v. State*, 437 A.2d 559 (Del.1981).

2. *Hunter v. State*, 815 A.2d 730 (Del.2002).

Bugra returned again, demanding Ede give him a ride. Ede responded by telling Bugra not to bother him further. At this point, Ede claims Bugra went behind him and hit him in the head with a beer bottle causing him to fall to the ground, bleeding. Ede further testified that after he was helped to his seat by another patron, Bugra struck him again with a beer bottle, this time in the forehead. Ede received stitches for his injuries and his eyes became black and swollen. He received further treatment on three separate occasions.

Bugra testified at trial to events very different from those Ede described. Bugra claims that during the course of the evening he went to the bathroom. Upon returning from the bathroom he found Ede had taken his seat. Bugra asked Ede to move but Ede became abusive and insulting. Ede then began to provoke Bugra by throwing coasters at Bugra and his friends and poking them with a key. Bugra then confronted Ede and, with a beer bottle in his hand, he hit another beer bottle. Ede somehow ended up on the floor. Bugra then began to challenge Ede but Bugra's friends pushed him out the door. Ede then came toward Bugra with something in his hand and Bugra punched him in the face. At trial Bugra denied hitting Ede with a beer bottle.

Detective Leonard Aguilar also testified at trial. He stated that he arrived on the scene, took Bugra into custody and interviewed him. Bugra told Detective Aguilar that Ede had taken his seat at the bar and, when Bugra asked for his seat back, Ede insulted his mother. Detective Aguilar then testified that Bugra stated he became upset with Ede and struck him in the back of the head with a bottle.

Other witnesses testified regarding the incident but no one specifically saw Bugra hit Ede with a bottle. They did, however, see Ede on the floor bleeding with Bugra standing over him.

The State indicted Bugra on two counts of Second Degree Assault. The jury, however, convicted Bugra of one count of Second Degree Assault and one count of the lesser included offense of Third Degree Assault. Bugra appeals his convictions.

### *Issue on Appeal*

■ Bugra raises only one issue on appeal. He asserts that the trial court erred by denying his motion for mistrial. Bugra contends that a mistrial was appropriate in his case because the State denied him a fair trial by making an improper remark during its closing argument. The State contends that no rights were violated because the case was not close and the judge issued a curative instruction. We review for abuse of discretion the Superior Court's denial of a motion for mistrial.[3]

■ A mistrial is warranted "only where there is a manifest necessity or the ends of public justice would be otherwise defeated."[4] Thus Bugra must demonstrate that a mistrial was a manifest necessity after the prosecutor made the remark.

■ It is improper for a prosecutor to comment personally on his opinion of the case or the defendant.[5] An improper remark by a prosecutor requires reversal of a conviction, however, only when it preju-

---

3. *Boatson v. State*, 457 A.2d 738, 743 (Del. 1983).

4. *Steckel v. State*, 711 A.2d 5, 11 (Del.1998) quoting *Fanning v. Superior Court*, 320 A.2d 343, 345 (Del.1974).

5. *Brokenbrough v. State*, 522 A.2d 851, 858–59 (Del.1987) (noting "In a closing argument, the use of the word 'I' only serves to emphasize for the jury that the prosecutor, i.e. the speaker, personally believes the point that is being submitted to the jury for its consideration.").

dicially affects substantial rights of the accused.[6] To determine whether remarks by a prosecutor prejudicially affected the defendant this Court uses a three-prong test and analyzes: (1) the closeness of the case; (2) the centrality of the issue affected by the alleged error; and (3) the steps taken to mitigate the effects of the alleged error.[7]

■ During the State's closing argument, the prosecutor relayed to the jury that determining guilt was similar to assembling a jigsaw puzzle of the American flag. In the course of the prosecutor's analogy Bugra began to laugh. In response to his laughter the prosecutor stated, "I guess Mr. Bugra thinks it's funny." Bugra objected to the prosecutor's remark. The State then withdrew the comment and apologized to the court. The trial judge also issued a curative instruction. Bugra, however, moved for a mistrial which the court denied.

■ The prosecutor's remark was a personal comment on Bugra's demeanor. As such, it was improper. For Bugra's conviction to require reversal as a result of the prosecutor's remark, however, he must satisfy the three-prong *Hughes* test.

### 1. Closeness of the Case

■ Bugra alleges the case was close. As support he states the fact that the prosecutor mainly attacked his credibility in his closing argument and did not discuss the facts of the case. The case, however, was not close. Ede testified to the events that happened that evening. He related that Bugra had hit him in the head with a beer bottle. Furthermore, the state offered into evidence hospital records that indicated the nature of Ede's injuries. Most telling, however, is the statement taken by Detective Aguilar shortly after he arrested Bugra. In that statement Bugra admits to having hit Ede with a beer bottle. Although Bugra later changed his account of the events at trial, it was reasonable for the jury to infer from the statement taken by the officer that Bugra had in fact hit Ede with a beer bottle. In addition, two of the witnesses indicated that they saw Bugra standing over Ede with a beer bottle in his hand.

Bugra had no evidence or witnesses to support his version of the events. Furthermore, his depiction of what occurred that night changed from the time he made his statement to the police officer until the time of trial, weakening his credibility. In light of the evidence in the record and the testimony of the witnesses, especially Detective Aguilar, this was not a close case.

### 2. Centrality of the Issue

■ Bugra contends that the prosecutor stating, "I guess Mr. Bugra thinks it's funny" affected his credibility in the eyes of the jury. His credibility, he argues, was central to his case because of the fact that he alone testified to his version of the events.

The problem with Bugra's claim is that his credibility had already diminished as a result of the differing depiction of events he gave to Detective Aguilar and the jury. Shortly after his arrest Bugra told Detective Aguilar he had hit Ede over the head with a beer bottle. Then, later at trial, he testified that he never hit Ede with a beer bottle but, rather, hit another bottle. Thus either Bugra was not telling the truth to the officer or to the jury. Either way his credibility was diminished by his conflicting stories.

■ Bugra also contends that the context of the prosecutor's statement is what

---

6. *Boatson,* 457 A.2d at 743 citing *Sexton v. State,* 397 A.2d 540, 544 (Del.1979).

7. *Id.* citing *Hughes,* 437 A.2d at 571.

makes it especially inflammatory. Just prior to the prosecutor making the statement at issue he was giving the jury an analogy involving an American flag. Bugra argues that because he is Turkish the prosecutor's comment made it appear as if he was laughing at the American flag. After the events of September 11, 2001, he contends this type of insinuation is prejudicial because of the political climate of the country.

Bugra's allegation is problematic for a number of reasons. First, the prosecutor explained to the court that what he was depicting to the jury was that while assembling a jigsaw puzzle of the American flag even if you do not know it's the American flag as you put some of the pieces together you can draw the conclusion that it is the flag. Thus even if they, as jurors, do not have all of the pieces of the story of the events of that night, they can still get an idea of what occurred. Although the prosecutor's use of the American flag as the puzzle may be a little suspect because of Bugra's nationality, it does not necessarily draw the conclusion that the jury should convict Bugra because he is Turkish.

Second, as the State points out, this was a case where both the victim and the defendant were Turkish. It is not a case of a Turkish person assaulting an American. Thus an improper inference by the jury was not likely.

Finally, the judge placed on the record the fact that Bugra was laughing when the prosecutor made the statement. Although this does not excuse the comment, it acknowledges that the jury was probably able to see him laughing as well.

This case is distinguishable from *Morris v. State* where we found reversible error.[8] In *Morris* the prosecutor improperly ar-

gued to the jury that they may acquit the defendant only if the State's witnesses were lying.[9] We held that such an argument directly attacked witness credibility which was a central issue at trial. The centrality of credibility coupled with the prosecutor's comment compelled reversal.[10] Bugra's argument, however, that the prosecutor prejudiced him by making the comment is misplaced. Bugra prejudiced himself by his laughter. The prosecutor's comment, although improper, did not affect Bugra's credibility.

### 3. Steps taken to Mitigate Prejudice

After the prosecutor made his remark Bugra objected. The State then withdrew the comment and apologized to the court. In addition, the judge issued a curative instruction. Specifically the court instructed the jury, "What the attorneys think is not relevant, and the jury should disregard it."

The steps taken to mitigate any error here were sufficient. An objection was made and sustained, the prosecutor withdrew his remark and apologized, and the judge issued a curative instruction. Furthermore during sidebar, when Bugra made his motion for mistrial, the judge asked Bugra if he wanted any further instruction to the jury. Bugra declined, however, because he believed if the jury did not insinuate anything negative from the prosecutor's comment, he did not want to further the damage by drawing more attention through another jury instruction. Thus the State's comment was not so offensive that it was clear to all.

In *Hunter v. State* this Court recently held that in addition to the three part *Hughes* test we would consider whether "the prosecutor's statements are repetitive errors that require reversal because they

---

**8.** *Morris v. State*, 795 A.2d 653, 661 (Del. 2002).

**9.** *Id.* at 659–60.

**10.** *Id.* at 660–61.

cast doubt on the integrity of the judicial process."[11] This Court reversed the conviction in *Hunter* where the prosecutor made numerous improper comments covering nine different categories, the most egregious of which related to defense counsel's role and the reasonable doubt standard.[12] Unlike the prosecutor in *Hunter* the prosecutor in Bugra's case made only one improper comment. Furthermore this comment was not directed at the role of defense counsel or the reasonable doubt standard but at the fact that Bugra was laughing during closing arguments. Thus Bugra does not find support for his argument from the facts in *Hunter*.

Bugra fails to meet any of the *Hughes* requirements or the additional requirement set out in *Hunter*. His claim that the trial court erred by failing to grant his motion for mistrial is error. This is not a case where a mistrial was a "manifest necessity." The evidence against Bugra was convincing and the court indicated on the record the fact that Bugra actually was laughing. The court also issued a curative instruction. Although the prosecutor's comment was improper it does not require reversal.

### *Conclusion*

We continue to admonish lawyers that it is improper to personally comment on the defendant's case or the defendant himself during trial. Although Bugra was actually laughing when the remark was made, counsel should have refrained from commenting on the defendant's demeanor. The comment was error, it was not, however, prejudicial to Bugra's case.

The judgment of the Superior Court is AFFIRMED.

---

**11.** *Hunter,* 815 A.2d at 733.

**12.** *Id.* at 733–36.